IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REECON NORTH AMERICA, LLC, | ) | |
| | ) | CIVIL DIVISION |
| Plaintiff, | ) | |
| v. | ) | Case No. 2:23-CV-890 |
| | ) | |
| ENERCO GROUP, INC., | ) | |
| | ) | Jury Trial Requested |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Reecon North America, LLC ("Plaintiff" or "Reecon NA"), hereby brings this Complaint ("Complaint") against Defendant Enerco Group, Inc. ("Enerco") and states as follows:

## NATURE OF THE ACTION

1. This is a civil action arising from tortious interference with contract by Defendant Enerco, by which interference Enerco has also been unjustly enriched.

2. Starting in 2005, Plaintiff Reecon NA identified the market demand for diverse space-heater and gas-log products in North America. Reecon NA registered the trademark for "Thermablaster" brand heaters and developed a product identity that would be uniquely marketable in North America.

3. During this time, Reecon NA became acquainted with Reecon M&E Co., Ltd. ("Reecon M&E") as the potential designer and manufacturer of Thermablaster products.

4. In 2013, Reecon NA entered into a Membership Interest Purchase and Supply Agreement with Reecon M&E (the "Exclusive Supply Agreement") and one of Reecon M&E's principles, whereby Reecon M&E would design and manufacture Thermablaster products distributed by Reecon NA.

5.  The Exclusive Supply Agreement made Reecon NA the exclusive and sole distributor in all of North America for all products manufactured by Reecon M&E. The term of exclusivity was from on or about January 31, 2013 until December 31, 2018. (Exclusive Supply Agreement, ¶ 8.1).

6.  Enerco knew or should have known of the contractual exclusivity relationship between Reecon NA and Reecon M&E when it, at least as early as 2017, initiated a relationship with Reecon M&E by which Enerco would distribute Reecon M&E products in North America.

7.  Enerco's distributorship relationship with Reecon M&E was an intentional and tortious interference with Reecon M&E's and Reecon NA's Exclusive Supply Agreement by which Enerco was unjustly enriched.

## PARTIES

8.  Plaintiff Reecon North America, LLC is a limited liability company organized under the laws of the State of Delaware with its principal place of business located at 2515 Liberty Avenue, Pittsburgh, Pennsylvania 15222. Reecon NA is a citizen of Pennsylvania based upon the citizenship of its sole member David Brand, a natural person, resident, and citizen of Pennsylvania. Reecon NA engages in the business of the distribution and sale of commercial, residential, special use, and decorative heating appliances.

9.  Defendant Enerco Group, Inc. is an Ohio corporation with its principal place of business located at 4560 West 160th Street, Cleveland, Ohio 44135. Enerco is engaged in the business of the manufacture, service, and distribution of commercial, residential, and special use heating products and parts.

10. Enerco conducts business and product sales in Pennsylvania, targets Pennsylvania customers, and promotes and sells its products nationwide (including in

Pennsylvania) through its website and printed product catalogs. Specifically, Enerco's Mr. Heater brand of products is sold online into Pennsylvania and also in Pennsylvania, including at Lowe's, Home Depot, Cabela's, Ace Hardware, Dick's Sporting Goods, and at other retailers, all of which have locations in Pennsylvania. Enerco ships its products into Pennsylvania, and—upon information and belief—conducts business trips and attends trade shows in Pennsylvania, advertises in Pennsylvania, and collects revenue from Pennsylvania residents for Enerco product purchases. Additionally, Enerco regularly communicates with Pennsylvania residents regarding Enerco's business, products, product sales, and customer service.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because the parties are diverse and because the matter in controversy exceeds $75,000.00.

12. Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to the claims contained in this Complaint occurred in the Western District of Pennsylvania.

13. Specific personal jurisdiction is proper over Enerco because Reecon NA's causes of action against Enerco arise in Pennsylvania and out of Enerco's contacts with this forum. Enerco has purposefully availed itself of the privilege of conducting business in this forum, and personal jurisdiction over Enerco comports with fair play and substantial justice. Moreover, harm has occurred to Reecon NA in this forum.

## FACTUAL ALLEGATIONS

A.  **Reecon NA's Heater Business and Exclusivity Relationship with Reecon M&E**

14. In 2013, Reecon NA entered into the Exclusive Supply Agreement with Reecon M&E and one of Reecon M&E's principles, whereby Reecon M&E would design and manufacture Thermablaster products distributed by Reecon NA.

15. This Exclusive Supply Agreement, in which Enerco tortiously interfered, was entered into and, in substantial part, performed in the Western District of Pennsylvania by Reecon M&E and Reecon NA.

16. The Exclusive Supply Agreement had an Exclusivity Provision, making Reecon NA the exclusive and sole distributor in all of North America for all products manufactured by Reecon M&E: in Section 7.1 of the Exclusive Supply Agreement, Reecon M&E covenanted that "During the term of [the Exclusive Supply Agreement], Reecon [M&E] hereby appoints [Reecon NA] as a distributor of Reecon [M&E]'s products and grants [Reecon NA] the exclusive right to distribute and sell Products in North America."

17. The Exclusivity Provision is broad, stating "The exclusivity granted to [Reecon NA] means that Reecon [M&E] will not sell or distribute its products directly in North America except through [Reecon NA] and will not appoint any other person or entity to distribute and sell its products in North America during the term of this Agreement."  (Exclusive Supply Agreement, ¶ 7.1).

18. The term of the Exclusive Supply Agreement was from on or about January 31, 2013 until December 31, 2018, with some terms remaining in effect after that time, and the Exclusive Supply Agreement was not terminable at will.  (Exclusive Supply Agreement, ¶¶ 8.1, 8.2).

4

B. **Enerco Knew of Reecon NA and Reecon M&E's Contractual Exclusivity Relationship**

19. Beginning in 2016 and carrying over into 2017, Enerco and Reecon NA communicated with each other regarding Enerco's possible purchase of Reecon NA.

20. Through negotiations between Enerco and Reecon NA for the sale of Reecon NA to Enerco, Enerco purposefully availed itself of the privilege of conducting activities within Pennsylvania.

21. The parties entered into a non-disclosure agreement allowing them to exchange confidential information. During their subsequent communications, Reecon NA's sole member, David Brand, informed Enerco of the contractual exclusivity arrangement between Reecon NA and Reecon M&E.

22. Mr. Brand met with representatives of Enerco, including Jeff Mack, Jeff Bush, and Brian Vandrak, during an in-person meeting at Enerco's Cleveland offices in or about February 2017. A presentation was shown during the meeting regarding Reecon NA's manufacturing and supply chain, and Mr. Brand disclosed and explained Reecon NA's exclusivity rights related to these topics at that time. Exclusivity was an asset of Reecon NA shared with Enerco as part of the considerations for purchase.

23. On information and belief, Enerco may have also learned from Reecon M&E or others about Reecon NA and Reecon M&E's contractual exclusivity relationship.

24. Enerco knew or should have known when it proceeded into a distribution relationship with Reecon M&E that it was going around Reecon NA to cut Reecon NA out of its rights as an exclusive distributor. Enerco knew or should have known that Reecon NA and Reecon M&E's exclusivity agreement was broad enough to prohibit appointment of Enerco as a distributor in preparation for later sales.

## C. During the Contractual Exclusivity Period, Enerco Established a Distributorship Relationship With Reecon M&E

25.     During Reecon NA and Reecon M&E's contractual exclusivity period, Reecon M&E and Enerco established a relationship whereby Enerco would act as a distributor in North America of Reecon M&E's products, thereby appointing Enerco as a distributor.

26.     Enerco started to develop this relationship with Reecon M&E in the summer of 2017, just a few months after Enerco meet with Reecon NA about a potential purchase. At the time, Enerco was still in the midst of its non-disclosure agreement with Reecon NA related to that sale, under which Reecon NA disclosed operations and supply chain information.

27.     Under the Exclusivity Provision in the Exclusive Supply Agreement, any appointment by Reecon M&E during the exclusivity period of a distributor of its products into North America other than Reecon NA was a violation of the Exclusivity Provision.

28.     Enerco entered into a distributorship relationship with Reecon M&E during the exclusivity period despite knowing that Reecon NA and Reecon M&E had an existing contractual exclusivity relationship and that Enerco's appointment as distributor would violate the Exclusivity Provision.

29.     Enerco developed and entered into a distributorship relationship with Reecon M&E with the intention of wresting from Reecon NA the contractual benefit of being the exclusive distributor of Reecon M&E's products in North America.

30.     By establishing its own distributorship relationship with Reecon M&E, Enerco knew that it stood to gain considerable pecuniary and financial benefit from selling and distributing Reecon M&E's products in North America.

31. Additionally, Enerco knew that any distribution or sales by it of Reecon M&E's products in North America necessarily would subtract from potential sales by Reecon NA of Reecon M&E's products in North America.

32. Despite knowing of Reecon M&E and Reecon NA's contractual exclusivity relationship, Enerco formed a distributorship relationship with Reecon M&E, thereby damaging Reecon NA. Reecon NA was deprived of the financial gain it would have received from being Reecon M&E's sole distributor of Reecon M&E's products in North America.

33. Reecon M&E and Enerco entered into a distribution agreement during Reecon NA's exclusivity period, which was contractually prohibited without including Reecon NA. Enerco knew it was cutting Reecon NA out of a supply chain to which Reecon NA was entitled and required to be a part of at the time, and Enerco unfairly received the income and benefits of doing so.

34. Enerco went on to secure sales and distribution arrangements during the exclusivity period that Reecon NA should have been included in as the only permissible distributor at the time. Any sales, income, or other benefits that resulted from distribution arrangements made during the exclusivity period should have inured to Reecon NA as the only permissible distributer at the time.

35. Additionally, the space heater and gas-log products designed and manufactured by Reecon M&E, distributed by Reecon NA, and unjustly distributed by Enerco, require months or years of product development and refinement, safety testing and certification, and marketing before such products can be placed at retailers and actually distributed. Enerco unjustly received the benefit of this development, certification, marketing, and lead time at least throughout 2017

and 2018, by setting these tasks in motion and forming a distribution relationship with Reecon M&E when Reecon NA was entitled to be Reecon M&E's sole distributor.

36. The appointment of Enerco as Reecon M&E's distributor during the exclusivity period not only violated the express terms of the Exclusive Supply Agreement, but also allowed Enerco to profit from lead time, preparation, sales, and distributions that should have involved Reecon NA. Reecon NA was the exclusive distributor throughout the time those products, sales, and distributions were developed, marketed, and secured and should have been a part of the distribution chain as the only permissible distributor at the time.

37. It is inequitable and unjust that Enerco received the benefits of an unfair head start in the market by forming a distribution relationship, developing products, placing products at retailers, and otherwise preparing for distributions all while Reecon NA was entitled to be Reecon M&E's exclusive distributor. Reecon NA should have received the benefits of any head start on sales and distribution that occurred while Reecon NA was entitled to exclusivity. Reecon NA should have received the benefits of any distribution plan, supply chains, or product placements put in place while Reecon NA was required to be involved as the sole and exclusive distributor.

38. Enerco's interference with Reecon NA's exclusive distributor rights, and Enerco's unjust enrichment, caused harm in the Western District of Pennsylvania to a Pennsylvania citizen, Reecon NA.

## CLAIMS

### COUNT I – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS
### Enerco Group, Inc.

39.     Reecon NA reasserts and incorporates by reference the other allegations of its Complaint as if rewritten here.

40.     Despite knowing of the contractual exclusivity relationship between Reecon NA and Reecon M&E, Enerco acted in various ways with the intention to interfere with that contract and become a distributor in North America of Reecon M&E's products.

41.     Enerco's actions included, *inter alia*, communicating with Reecon M&E regarding a potential distributor relationship; developing and entering into a distribution relationship; developing products and product designs with Reecon M&E; securing financing relating for manufacture and distribution; undertaking product and tooling development and reviewing these with Reecon M&E; on information and belief, negotiating and executing a North American distribution contract with Reecon M&E; exchanging promises related to North American supply; describing the Enerco and Reecon M&E as a "family;" planning for and scheduling the manufacture and shipment of products manufactured by Reecon M&E; and securing distribution and supply relationships with retailers that should have included Reecon NA as the only permissible North American distributor at the time.

42.     Enerco not only was appointed as a distributor by Reecon M&E but also acted as Reecon M&E's distributor by developing products and securing supply chains and sales during Reecon NA's exclusivity period, thus tortiously interfering with Reecon NA's exclusivity rights.

43.     Enerco was not privileged or justified in interfering with Reecon NA and Reecon M&E's contractual exclusivity relationship.

44.     Reecon NA has been damaged as described herein in excess of $75,000.

## COUNT II – UNJUST ENRICHMENT
### Enerco Group, Inc.

45.     Reecon NA reasserts and incorporates by reference the other allegations of its Complaint as if rewritten here.

46.     Enerco received extensive benefits from the distributorship relationship that it formed with Reecon M&E and from the products it developed and placed at North American retailers, despite knowing that Reecon NA and Reecon M&E had a contractual exclusivity relationship at the time that prohibited the distribution of Reecon M&E's products in North America by any entity other than Reecon NA.

47.     Enerco not only was appointed as a distributor by Reecon M&E but also acted as Reecon M&E's distributor by developing products and securing supply chains and sales during Reecon NA's exclusivity period, unjustly gaining the income and benefits that Reecon NA was entitled to expect.

48.     Enerco intentionally sought these benefits and has accepted and retained them.

49.     Enerco intentionally sought these benefits despite knowing that any such action would be an interference in the contractual exclusivity relationship existing between Reecon NA and Reecon M&E and that Enerco would strip from Reecon NA benefits that Reecon NA was entitled to expect under the Exclusive Supply Agreement.

50.     It would be inequitable for Enerco to retain the benefits of its distributorship relationship with Reecon M&E and with retailers because Enerco formed those relationships despite knowing of the contractual exclusivity relationship existing at that time between Reecon NA and Reecon M&E.

51. Reecon NA in entitled to profits and other income and benefits wrongly retained by Enerco from product development and distribution and supply relationships with retailers that should have included Reecon NA as the only permissible North American distributor at the time.

52. Enerco has been unjustly enriched as described herein in excess of $75,000.

## JURY TRIAL REQUESTED

53. Reecon NA requests a jury trial on all issues so triable.

## RELIEF REQUESTED

Plaintiff Reecon NA hereby requests that this Court enter judgment in its favor and against Defendant Enerco Group, Inc., and award to Reecon NA damages in an amount to be determined at trial in excess of $75,000 for Enerco's tortious interference and unjust enrichment, including punitive damages, unjust enrichment damages, attorney's fees, interest, and costs as provided by any law, and such other relief in law or equity which the Court deems appropriate.

Respectfully submitted,

/s/ David M. Belczyk
David M. Belczyk (PA 204214)
David I. Kelch (PA 313692)
PORTER WRIGHT MORRIS & ARTHUR LLP
6 PPG Place, Third Floor
Pittsburgh, PA 15222
Phone: 412-235-1483
Fax: 412-235-4510
dbelczyk@porterwright.com
dkelch@porterwright.com

David S. Bloomfield, Jr. (*Pro Hac Vice pending*)
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street, Suites 2800 - 3200
Columbus, OH 43215
Phone: 614-227-2169
Fax: 614-227-2100
dbloomfield@porterwright.com

*Counsel for Reecon North America, LLC*

15218862

11