**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

REECON NORTH AMERICA, LLC,    )
                                                   )
                                                   )
               Plaintiff,         )
                                                   )   2:23-CV-890
                                                   )
               v.               )
                                                   )
ENERCO GROUP, INC.,            )
                                                   )
                                                 )
               Defendant.      )
                                                 )

**MEMORANDUM OPINION**

**J. Nicholas Ranjan, United States District Judge**

This is primarily a case involving allegations of tortious interference with an exclusive supply contract.  That is, Plaintiff Reecon North America, LLC ("NA") entered into an Exclusive Supply Agreement with Reecon M&E Co., Ltd. ("M&E"), whereby M&E would manufacture and supply NA with space heaters, and NA would then have the exclusive right to sell them.  Another seller of space heaters, Defendant Enerco Group, Inc., learned of this relationship, and formed its own distribution agreement with M&E during the term covered by the Exclusive Supply Agreement. NA brings a two-count complaint against Enerco and alleges that Enerco tortiously interfered with the Exclusive Supply Agreement and was unjustly enriched due to this interference.

Enerco moves to dismiss the complaint, arguing that the Exclusive Supply Agreement was no longer a valid, enforceable agreement at the time of any alleged interference and that, even it was, Enerco was "privileged" to interfere because it is in competition with NA.  Enerco further argues that if any claims survive, the Court should abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) because there is a parallel state-court proceedings that is further

along than this case. After careful consideration, the Court rejects Enerco's arguments and will deny the motion.

## BACKGROUND

NA developed a space-heater brand called "Thermablaster" and registered a trademark for that name. ECF 10, ¶ 2. In 2013, NA entered into an Exclusive Supply Agreement with M&E, pursuant to which M&E would design and manufacture Thermablaster products and NA would distribute the products. *Id.*, ¶ 4, 14. The Exclusive Supply Agreement made NA the exclusive distributor of all products manufactured by M&E from January 31, 2013, until December 31, 2018. *Id.*, ¶ 5; ECF 13, pp. 57, Exclusive Supply Agreement ¶ 8.1.[1]

In 2016 and 2017, Enerco and NA were discussing the possibility of Enerco's purchase of NA. ECF 10, ¶ 22. As part of these discussions, NA and Enerco entered into an NDA; during due diligence, Enerco learned of the Exclusive Supply Agreement because it was presented as an asset as part of the consideration for the purchase. *Id.*, ¶¶ 24-25. In 2017, Enerco started to develop a relationship with M&E, and the two companies eventually entered into their own distribution agreement during the exclusivity period under the Exclusive Supply Agreement. *Id.*, ¶¶ 29, 36. By doing so, NA necessarily lost out on the "exclusivity" of the relationship it had with M&E. *Id.*, ¶ 30.

NA only discovered M&E's dealings with Enerco through a separate case that M&E filed against NA and others. *Id.*, ¶¶ 45, 47. In that state-court suit, M&E

---

[1] NA did not attach the Exclusive Supply Agreement to its complaint. However, Enerco attached it as an exhibit to its motion to dismiss. The Court can properly consider the Exclusive Supply Agreement because on a motion to dismiss, the Court can consider "undisputedly authentic documents that defendant attaches as an exhibit to a motion to dismiss if plaintiff's claims are based on the attached documents." *Daimler Tr. v. Weng*, No. 22-1082, 2023 WL 3740820, at *3 (W.D. Pa. May 31, 2023) (Schwab, J.) (cleaned up).

alleges, among other things, that NA breached the Exclusive Supply Agreement. ECF 13, Ex. B.  The first amended complaint refers to this state-court litigation as the "Reecon Defect Litigation."  *Id.*, ¶ 45.

## DISCUSSION & ANALYSIS[2]

### I.    NA properly states a claim for tortious interference.

NA's primary claim in this case is that Enerco tortiously interfered with its Exclusive Supply Agreement with M&E.  In Pennsylvania, the elements of tortious interference with an existing contract are: (1) the existence of a contract between the plaintiff and a third party; (2) purposeful action by the defendant specifically intended to harm the existing relationship; (3) the absence of privilege or justification; and (4) damage.  *Acumed LLC v. Adv. Surgical Services, Inc.*, 561 F.3d 199, 212 (3d Cir. 2009) (citation omitted).  "The plaintiff bears the burden of proving each element, including the absence of privilege."  *PSC Info Group v. Lason, Inc.*, 681 F. Supp. 2d 577, 593 (E.D. Pa. 2010) (citation omitted).  Enerco argues NA's claim fails because NA did not adequately plead the first and third elements.  ECF 13, p. 6.  The Court disagrees.

As to the first element, Enerco argues that there wasn't an enforceable agreement between NA and M&E to interfere with, because M&E sued NA for breach of the Exclusive Supply Agreement before Enerco ever entered into its agreement

---

[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Any reasonable inferences should be considered in the light most favorable to the plaintiff.  *See Lula v. Network Appliance*, 255 F. App'x 610, 611 (3d Cir. 2007) (citing *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989)).

with M&E.  ECF 13, pp. 6-7.[3]  This argument, however, is premature.  Any allegations in the ongoing Reecon Defect Litigation are simply that—allegations.  The Reecon Defect Litigation has not been resolved, and thus there has been no finding that NA breached the Exclusive Supply Agreement.

As to the third element, Enerco argues that it was privileged to interfere because it is in competition with NA.  However, Enerco mistakes "the standard for interference with *prospective* contractual relations, or for a contract terminable at will, with the standard for interference with *existing* contractual relations." *Acclaim Sys., Inc. v. Infosys, Ltd.*, No. 13-7336, 2015 WL 4257463, at *3 (E.D. Pa. July 14, 2015) (emphasis in original).  "Pennsylvania has adopted section 768 of the Restatement (Second) of Torts, which recognizes that competitors, in certain circumstances, are privileged in the course of competition to interfere with others' prospective contractual relationships." *Acumed LLC*, 561 F.3d at 215 (citation omitted).  However, section 768 only applies to interference with prospective contractual relationships or existing contractual relationships that are terminable at will.  *Acclaim*, 2015 WL 4257463, at *3; Restatement (Second) of Torts § 768(2) ("The

---

[3] The legal underpinnings of this argument are as follows.  A material breach "excuses the non-breaching party from performing any remaining duties under a contract." *Frontline Techs., Inc. v. CRS, Inc.*, 880 F. Supp. 2d 601, 619 (E.D. Pa. 2012). Therefore, in the tortious-interference context, a material breach excusing the non-breaching party from performing any remaining duties negates the first element, the existence of a contract.  *See UMB Bank N.A. v. Asbury Communities, Inc.*, No. 20-160, 2021 WL 4712634, at *5 (N.D. Okla. Oct. 8, 2021) (holding that an act that occurred after a breach could not be the basis for a tortious interference claim); *Berman v. Davidson Media Virginia Stations, LLC*, No. 15-299, 2016 WL 775784, at *3 (E.D. Va. Feb. 26, 2016) (dismissing a tortious interference claim, stating that "[i]t stands contrary to basic logic that an event that occurred after the breach of a contract could have caused that same breach."); *Knight Enterprises v. RPF Oil Co.*, 829 N.W.2d 345, 349 (Mich. App. 2013) (holding that the trial court should have ruled that a tortious interference claim failed as a matter of law when the contract had already been breached before the alleged interference: "Because this essential element of a claim of tortious interference with a contract is absent, the trial court should have ruled that Knight's claim failed as a matter of law.").

fact that one is a competitor of another for the business of a third person does not prevent his causing a breach of an existing contract with the other from being an improper interference if the contract is not terminable at will."). The key question, therefore, is whether the Exclusive Supply Agreement was terminable at will.

"Where an agreement specifies the sole or exclusive conditions that will give rise to termination, it is definite in duration and therefore not terminable at will as a matter of law. In contrast, where an agreement merely specifies conditions that *may* result in termination of the agreement, it is indefinite in duration and terminable at will." *D & M Sales, Inc. v. Lorillard Tobacco Co.*, No. 9-2644, 2010 WL 786550, at *3 (E.D. Pa. Mar. 8, 2010) (emphasis in original).

Here, the Exclusive Supply Agreement has a definite term: "This Agreement shall be for a term effective as of the Effective Date and, unless earlier terminated in accordance with Section 8.2 hereof, terminating on December, 31st 2018 (the "Initial Term")." ECF 13, pp. 57, Exclusive Supply Agreement § 8.1. The Exclusive Supply Agreement also identifies specific situations in which it can be terminated: (1) by mutual written consent of the parties; (2) if one of certain specified breaches occur; and (3) if either party becomes insolvent. *Id.*, § 8.2(a)-(c).[4] All of this shows that the

---

[4] **8.2 Termination of Agreement.** This Agreement may be terminated as provided below:

(a) the Parties may terminate this Agreement by mutual written consent;

(b) [NA] may terminate this Agreement by giving written notice to [M&E] (i) in the event [M&E] or any Principal has breached any representation, warranty, or covenant contained in this Agreement in any material respect; provided that [NA] has notified [M&E] and the Principals of the breach, and the breach has continued without cure for a period of thirty (30) days after the notice of breach, (ii) if the Closing shall not have occurred on or before December 31, 2013, by reason of the failure of any condition precedent under Section 6 hereof (unless the failure results primarily from the [NA] itself breaching any representation, warranty, or covenant contained in this Agreement), or (iii) in the event of a change of control of [M&E].

contract is not terminable at will.  *See Schultz v. Onan Corp.*, 737 F.2d 339, 347 (3d Cir. 1984); *Bachman Co. v. Anthony Pinho, Inc.*, No. 91-5679, 1993 WL 64620, at \*5 (E.D. Pa. Mar. 3, 1993); *TMT Sales Co. v. Canadian Shield Spring Water Co., Ltd.*, No. 88-8449, 1990 WL 107945, at \*4-5 (E.D. Pa. July 26, 1990).

Because the Exclusive Supply Agreement is not terminable at will, Enerco's claim of privilege fails.  The first amended complaint plausibly alleges an absence of any privilege by Enerco.[5]

## II.    The Court will not stay the case pending the outcome of the Reecon Defect Litigation.

Enerco argues that even if the Court denies its motion to dismiss, the Court should abstain and stay the action pursuant to the *Colorado River* doctrine.  ECF 13, p. 11.  The *Colorado River* doctrine allows a federal court to stay or dismiss a pending action when there is a parallel state-court proceeding and "extraordinary circumstances" warrant abstention.  *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307-08 (3d Cir. 2009).  A parallel state proceeding is

---

(c) If either [M&E] or [NA] shall become insolvent or bankrupt or admit in writing its inability to pay its debts as they mature, or make an assignment for the benefit of its creditors or cease to function as a going concern, the other party shall have the right to terminate this Agreement by giving written notice of its election to do so by facsimile or registered letter to the other parties.  Such termination shall be effective within thirty (30) days after such notice if the occurrence giving rise to the right of termination has not been cured.

ECF 13, pp.  57, Exclusive Supply Agreement § 8.2.

[5] Enerco also seeks to dismiss the unjust-enrichment claim, on the basis that if the tortious-interference claim fails, then the unjust-enrichment claim must fail too.  ECF 13, pp. 8-10.  Because the Court finds that NA has pleaded a plausible claim for tortious interference, the derivative unjust-enrichment claim survives, as well.  *Bral Corp. v. Johnstown Am. Corp.*, 919 F. Supp. 2d 599, 621 (W.D. Pa. 2013) (Gibson, J.) (denying summary judgment on unjust-enrichment claim because summary judgment on tortious-interference claim was denied).

one "that raises substantially identical claims and nearly identical allegations and issues." *Id.* at 307 (cleaned up). In determining whether an action presents extraordinary circumstances, courts consider six factors: "(1) in an *in rem* case, which court first assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties." *Id.* at 308 (cleaned up).

A stay is not proper under the *Colorado River* doctrine, as Enerco cannot establish either the existence of a parallel state-court action or extraordinary circumstances.

Initially, the threshold requirement of a "parallel" action hasn't been met. Under the *Colorado River* doctrine, "parallel proceedings are those that are truly duplicative, that is, when the parties and the claims are identical, or at least effectively the same." *Kelly v. Maxum Specialty Ins. Group*, 868 F.3d 274, 285 (3d Cir. 2017). That cannot be said about the state and federal proceedings here. In the Reecon Defect Litigation, M&E is the plaintiff, NA is the defendant, Enerco is not a party at all, and M&E is raising breach-of-contract claims. In this case, NA is the plaintiff, Enerco is the defendant, M&E is not a party, and NA is raising tortious-interference and unjust-enrichment claims. The overlap of one party does not make the two cases sufficiently parallel. *See id.*

Additionally, weighing the six factors above, the Court finds that they do not, on balance, rise to the level of extraordinary circumstances:

- **In rem.** This factor doesn't apply because neither action is an *in rem* action.

- **Inconvenience of the federal forum.** The federal forum is no more inconvenient than the state court forum, as both the state and federal

cases are pending in courts that are located in the same city. *Blank River Servs., Inc. v. Towline River Serv.*, Inc., 395 F. Supp. 3d 589, 599 (W.D. Pa. 2019) (Hornak, C.J.) (finding no inconvenience when both the state court and the federal court were "geographically located in Pittsburgh, Pennsylvania.").

- **Avoidance of piecemeal litigation.**  The third factor might facially seem to weigh in favor of abstention, but, on closer review, it doesn't.  If the state court finds that the contract was unenforceable at the time Enerco interfered, that would potentially resolve the claims in this action.  But just because there may be a relatedness between issues in two cases, it doesn't trigger the type of risk of piecemeal litigation contemplated by *Colorado River*.  *Blank River Servs., Inc.*, 395 F. Supp. 3d at 601.  *Colorado River* seeks to eliminate the risk of duplicative litigation when "there must be a strongly articulated congressional policy against piecemeal litigation in the specific context of the case under review."  *Id.* (cleaned up).  "In other words, the 'avoidance of piecemeal litigation' factor only supports abstention when there is evidence of a strong federal policy that all claims should be tried in the state courts."  *Id.* (cleaned up).  There's no strong federal policy involved here.

- **Order in which jurisdiction is obtained.**  The fourth factor is perhaps the lone factor that arguably weighs in favor of abstention. This factor measures the relative progress of the two cases.  *Nationwide Mut. Fire Ins. Co.*, 571 F.3d at 309 (stating that courts "must consider more than which action was filed first." (citation omitted)).  From the state-court docket, it appears that the state-court case is in the middle of discovery, while discovery hasn't yet commenced here.  ECF 13, Ex. A.

- **Whether federal or state law controls.**  The fifth factor is neutral because while there are state-law claims, this Court, which sits in Pennsylvania, is also familiar with Pennsylvania law.  *Flint v. A.P. Desanno & Sons*, 234 F. Supp. 2d 506, 514 (E.D. Pa. 2002) ("Although the presence of federal issues always weighs against abstention, abstention cannot be justified simply because a case arises entirely under state law.   Federal jurisdiction is often invoked under the diversity statute, requiring federal courts routinely to interpret issues entirely within the realm of state law." (cleaned up)).

- **Inadequacy of the state forum.**  The sixth factor "is normally relevant only when the state forum is *in*adequate."  *Ryan v. Johnson*, 115 F.3d 193, 200 (3d Cir. 1997) (emphasis in original).  There is no indication that the Allegheny County Court of Common Pleas is an inadequate forum for adjudicating the claims in the Reecon Defect Litigation.  And "[w]hen the state court is adequate," this "factor carries little weight."  *Id.* (citation omitted).

In short, *Colorado River* abstention is the exception, not the rule.  And federal courts have a "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).  Based on the showing made, Enerco has not established sufficiently exceptional circumstances to invoke the rare exception of abstention.  The Court will not stay the case. [6]

---

[6] Enerco relies heavily on *Wildfire Productions, L.P. v. Fenway Sports Group Hockeyco, LLC*, No. 21-01867, 2022 WL 744015 (W.D. Pa. Mar. 11, 2022) (Horan, J.) (staying federal court action pending resolution of state court action).  That case presented a unique set of circumstances (*e.g.*, disputes involving a business acquisition; presence of a forum-selection clause; dueling motions to compel arbitration) not present here and therefore it is distinguishable and unhelpful.

\*     \*     \*

For these reasons, this **8th day of December, 2023,** it is hereby **ORDERED** that Enerco Group, Inc.'s motion to dismiss (ECF 13) is **DENIED**.

BY THE COURT:

/s/ *J. Nicholas Ranjan*
United States District Judge